**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 7** |
| | ) | |
| **GARLAND T. HARVEY,** | ) | **Case No. 08-71684** |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| **W. CLARKSON MCDOW, JR.** | ) | |
| **UNITED STATES TRUSTEE** | ) | |
| **FOR REGION IV,** | ) | |
| | ) | |
| Movant. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **GARLAND T. HARVEY,** | ) | |
| | ) | |
| Respondent. | ) | |

**DECISION AND ORDER**

At Roanoke in said District this 20th day of July, 2009:

The matter before the Court is the Motion for Summary Judgment filed by Garland T. Harvey (the "Debtor") in response to the United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. § 707(b)(1).  The U.S. Trustee seeks dismissal of the Debtor's Chapter 7 case for abuse and alleges that the presumption of abuse arises under 11 U.S.C. § 707(b)(2).  The Debtor argues that the motion to dismiss should be dismissed on the grounds that he correctly deducted debts secured by collateral that he intends to surrender and therefore no presumption of abuse arises.

## JURISDICTION

This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

The facts in this matter are not in dispute. The Debtor filed a voluntary Chapter 7 petition on September 2, 2008. The Debtor included with his petition the Chapter 7 Individual Debtor's Statement of Intention and Official Form 22A (the "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation"). On Form 22A, the Debtor calculates his current monthly income to be $5,342.00. To reach his monthly disposable income, the Debtor deducts from his current monthly income, among other expenses, the monthly payments owed to the two creditors secured by the Debtor's real property at 445 Liberty Via, Christiansburg, Virginia (the "Secured Debt"). The monthly payments on the Secured Debt average $1,526.77 per month over the sixty months from the petition date. On Line 50 of Form 22A, the Debtor determines that his monthly disposable income under § 707(b)(2) is *negative* $539.25. The Debtor properly listed the Secured Debt on Schedule D. The § 341(a) meeting of the creditors was held on September 30, 2008.

On November 11, 2008, the U.S. Trustee moved to dismiss the Debtor's Chapter 7 case pursuant to 11 U.S.C. § 707(b)(1). The U.S. Trustee argues that the presumption of abuse arises under § 707(b)(2) because the Debtor incorrectly deducted payments on the Secured Debt to determine his net disposable income. The U.S. Trustee asserts that, when calculated properly, the Debtor's net disposable income is over $800 per month, which is sufficient to fund at least a

$48,000 plan of reorganization over sixty months. The Debtor objected to the U.S. Trustee's motion to dismiss and statement of presumed abuse on March 25, 2009. The Debtor asserts that no presumption of abuse arises in this case because the Debtor is entitled to deduct payments on the Secured Debt.

## DISCUSSION

The bankruptcy court may dismiss an individual Chapter 7 debtor's case for abuse. 11 U.S.C.A. § 707(b)(1) (West 2009). The presumption of abuse arises if the debtor's net disposable income over sixty months exceeds the lesser of: (1) twenty-five percent of the debtor's nonpriority unsecured claims or $6,575, whichever is greater; or (2) $10,950. Id. § 707(b)(2)(A).[1] To calculate a debtor's net disposable income, the debtor's current monthly income must be reduced by his (1) monthly expenses; (2) average payments on secured debts over the sixty months following the petition date; and (3) average payments on priority claims over the sixty months following the petition date. Id. The debtor's current monthly income is the average of his or her income in the six months immediately preceding the petition date. Id. §§ 101(10A)(A), 707(b)(1)(A)(I).

The issue here is whether a debtor may deduct average payments on debts secured by property that he or she intends to surrender, as indicated on the Statement of Intention. Section

---

[1] The court in In re Ray, 362 B.R. 680 (Bankr. D.S.C. 2007), succinctly described the application of § 707(b)(2)(A):
> More simply stated, if, after all appropriate deductions from the debtors' current monthly income, the debtors have less than [$109.58] per month in monthly net income (i.e., less than [$6,575] to fund a 60-month plan), the filing is not presumed abusive. If the debtors have monthly net income of [$182.50] or more (i.e., at least [$10,950] to fund a 60-month plan), the filing is presumed abusive. Finally, if the debtors' monthly income is more than [$109.58] but less than [$182.50], the case will be presumed abusive if the income, when multiplied by 60, will pay 25% or more of the debtors' non-priority unsecured debts.

Id. at 681-82 (alterations reflect 2009 inflation-adjusted amounts).

3

707(b)(2)(A)(iii) provides:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—
>
> > (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
> >
> > (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

Id. § 707(b)(2)(A)(iii).

"[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004) (internal quotation marks and citations omitted). There are two narrow exceptions to the Plain Meaning Rule: (1) "when literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd"; and (2) "when literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent." RCI Tech. Corp. v. Sunterra Corp. (In re Sunterra Corp.), 361 F.3d 257, 265 (4th Cir. 2004) (citations omitted). When determining a statute's plain meaning, "courts should disfavor interpretations

4

of statutes that render language superfluous." Id. at 278 (internal quotation marks omitted) (quoting Witt v. United Cos. Lending Corp. (In re Witt), 113 F.3d 508, 512 (4th Cir. 1997) (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146 (1992))). Also, "identical words and phrases within the same statute should normally be given the same meaning." Powerex Corp. v. Reliant Energy Servs., Inc., 551 U.S. 224, 232, 127 S.Ct. 2411, 2417 (2007).

The U.S. Trustee argues that a debtor may not deduct payments on debts secured by property that the debtor intends to surrender under § 707(b)(2)(A)(iii)(I). First, the U.S. Trustee stresses that the plain language of the expense allowance for payments on secured debt in § 707(b)(2)(A)(iii)(I) is forward-looking. The U.S. Trustee contends that had Congress intended that debtors deduct all "contractually due" payments on secured debt, it would have omitted "scheduled as," permitting debtors to deduct "all amounts contractually due to secured creditors." Also, the U.S. Trustee argues that the phrase "scheduled as" should impart the same meaning as it does in § 1111(a), which provides that a "proof of claim or interest is deemed filed under section 501 of this title for any claim or interest that appears in the schedules . . . except a claim or interest that is *scheduled as* disputed, contingent, or unliquidated." 11 U.S.C.A. § 1111(a) (West 2009) (emphasis added). Because identical words used in different parts of a statute should be given the same meaning, "all amounts scheduled as contractually due" in § 707(b)(2)(A)(iii)(I) should refer to only those obligations on secured debts properly listed on a bankruptcy schedule. The later phrase, "following the date of the petition," limits the allowed deduction of payments on secured debts to only those post-petition payments that the debtor will actually make in accordance with his or her Statement of Intention.

Second, the U.S. Trustee compares § 707(b)(2)(A)(iii)(I) with its conjunctive partner § 707(b)(2)(A)(iii)(II). Section 707(b)(2)(A)(iii)(II) allows deduction of cure payments on encumbered property, but only property that is "the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents." 11 U.S.C.A. § 707(b)(2)(A)(iii)(II) (West 2009). This requires a forward-looking analysis of the debtor's needs. The U.S. Trustee concludes that the § 707(b)(2)(A)(iii)(I) must be forward-looking to remain consistent with its conjunctive partner, § 707(b)(2)(A)(iii)(II).

The Debtor responds that the plain language of § 707(b)(A)(iii)(I) requires a debtor to deduct from his or her net disposable income all payments on secured debts regardless of whether the debtors intends to surrender the encumbered property. The Debtor argues that "schedule" refers to either a plan indicating the time and sequence of each operation, or bankruptcy schedules A through J. An amount "scheduled" is one included on a schedule of either kind. If the first definition applies, the debtor should deduct any payment on a secured debt that is contractually due as of the petition date. The automatic stay in bankruptcy does not nullify the existence of a contract; it merely prohibits actions to collect on the underlying debt. Likewise, a bankruptcy discharge only discharges the debtor's personal liability; it does not extinguish the debt. The Debtor therefore reasons that debts secured by property that the debtor intends to surrender are "scheduled as contractually due" despite the debtor's stated intention. If the second definition of "schedule" applies, a debtor should deduct from his net disposable income payments on debts shown on bankruptcy schedules A through J. The Debtor notes that the Statement of Intention is not a bankruptcy schedule and does not change the treatment of a scheduled debt. The Debtor therefore urges that under either definition of "schedule," a debtor

may deduct payments on debts secured by property that the he or she intends to surrender.

The Fourth Circuit has not yet spoken to the issue presented in this case, and the lower courts are not in agreement. The majority of courts within this circuit hold that a debtor may deduct payments on debts secured by property that he or she intends to surrender. See Lynch v. Haenke (In re Lynch), 395 B.R. 346, 349 (E.D.N.C. 2008); In re Crawley, 2009 WL 902359, at *3 (Bankr. E.D. Va. Feb. 23, 2009); In re Daniels-Brown, 2008 WL 4379152, at *2 (Bankr. D. Md. Sept. 23, 2008); In re Quigley, 391 B.R. 294, 304 (Bankr. N.D. W.Va. 2008).[2] The Quigley court interpreted the phrase "scheduled as contractually due" to mean "those payments that the debtor will be required to make on certain dates in the future under the contract." 391 B.R. at 302 (quoting In re Walker, No. 05-15010, 2006 WL 1314125, at *3 (Bankr. N.D. Ga. May 1, 2006)). The act of surrendering encumbered property does not abrogate the debtor's obligation to make payments on the secured debt. Id. (citing In re Hayes, 376 B.R. 55, 62 (Bankr. D. Mass. 2007)). The Quigley court concluded that § 707(b)(2)(A)(iii)(I) is best understood as requiring a "'snapshot' of a debtor's liabilities as of the petition date" to be consistent with its conjunctive partner, § 707(b)(2)(A)(ii)(I).[3] Id. at 303. The Lynch court agreed with Quigley, finding that "a plain, ordinary reading of the subsection supports the bankruptcy court's finding that it applies to

---

[2] Both Bankruptcy Appellate Panels having considered the question also hold that a debtor may deduct payments on secured debts despite the intention to surrender the encumbered property. See Morse v. Rudler (In re Rudler), 388 B.R. 433, 438 (B.A.P. 1st Cir. 2008); Hildebrand v. Thomas (In re Thomas), 395 B.R. 914, 920 (B.A.P. 6th Cir. 2008) (endorsing the majority interpretation of § 707(b)(2)(A)(iii)(I) in the context of § 1325(b)(1)).

[3] Section 707(b)(2)(A)(ii)(I) determines the debtor's "monthly expenses," for the purposes of the § 707(b)(2)(A)(I) calculation, as

> the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case.

11 U.S.C.A. § 707(b)(2)(A)(I) (West 2009). This calculation requires a "snapshot" of the debtor's expenses as of the petition date. In re Quigley, 391 B.R. 294, 303 (Bankr. N.D. W.Va. 2008).

payments the debtor is under contract to make." 395 B.R. at 349. Because the Chapter 7 debtor remained contractually bound to make future payments on debts secured by collateral that he intended to surrender, the Lynch court held that "the statute allows such deductions to be made for the purposes of the means test." Id.

One bankruptcy court in this circuit, however, held that debtors may not deduct such payments. See In re Ray, 362 B.R. 680, 685 (Bankr. D.S.C. 2007). In Ray, the court found that the meaning of § 707(b)(2)(A)(iii)(I) was not plain, as evidenced by the contrary positions taken by various courts. 362 B.R. at 683. The Ray court disagreed with the majority position because "they come to the same conclusion about the meaning of the statute as would result if the words 'scheduled as' were not present." Id. The Ray court believed the words "60 months following the date of the petition" in § 707(b)(2)(A)(iii)(I) "contemplate a forward-looking calculation." Id. at 685. To the Ray court, the "better construction of 'scheduled as contractually due' would consider the debtors' intention to surrender the collateral and make no future payments to the creditor." Id.

This Court finds the majority interpretation persuasive.[4] First, a plain reading of the statute suggests that debtors are permitted to deduct all payments on secured debts that he or she is contractually bound to make. See Lynch, 395 B.R. at 348-49. A payment on a secured debt is still "contractually due" regardless of the debtor's intent to surrender the encumbered property. Morse v. Rudler (In re Rudler), 388 B.R. 433, 438 (B.A.P. 1st Cir. 2008). This Court agrees

---

[4] This bankruptcy court considered whether a debtor may deduct payments on debts secured by collateral that the debtor intends to surrender within the context of 11 U.S.C. § 1325(b) and the Chapter 13 means test. Beskin v. McPherson (In re McPherson), 350 B.R. 38 (Bankr. W.D. Va. 2006). The decision holds that a debtor may not deduct these payments. Id. at 45, 48. McPherson, however, "does not provide any insight into the method that a debtor, a trustee, or a Court should use when calculating the amount that a debtor may deduct from his or her income on account of secured debts under Clause 707(b)(2)(A)(iii)." Id. at 48.

with the Debtor that the phrase "scheduled as" could mean either "appears on a bankruptcy schedule" or "appears on a plan indicating the time and sequence of each operation."[5] Strong arguments are made for each interpretation. The choice has no bearing on this case, however. The Debtor's payments on the Secured Debt are contractually due following the petition date, and the Secured Debt appears on his bankruptcy schedules. Therefore, under either interpretation the Debtor's payments on the Secured Debt are "scheduled as contractually due."

Further, interpreting § 707(b)(2)(A)(iii) to require a forward-looking analysis of the debtor's actual anticipated payments on secured debts is inconsistent with the backward-looking nature for determining a debtor's current monthly income and other monthly expenses. Crawley, 2009 WL 902359, at *4. If Congress desired to prohibit deduction of payments on debts secured by surrendered property, it would have said so explicitly. Quigley, 391 B.R. at 303.

Finally, literal application of the statute does not produce an absurd result or one demonstrably at odds with the drafters' intent. Rudler, 388 B.R. at 439. "Congress' intent in adding the means test was to create a more objective standard for establishing a presumption of abuse and to reduce judicial discretion in the process." Id. (citing In re Randle, 358 B.R. 360, 363 (Bankr. N.D. Ill. 2006)). Allowing debtors to simply deduct all payments on secured debts is consistent with this desire.

In this case, the Debtor properly deducted the $1,526.77 for his monthly payments on the

---

[5] This Court believes that "scheduled as" is better interpreted to mean "appears on a debtor's bankruptcy schedules." This view gives meaning to "scheduled as," which should mean something more than just "contractually due." Further, a debtor's Statement of Intention is not a bankruptcy schedule. In re Sorrell, 359 B.R. 167, 185 (Bankr. S.D. Oh. 2007). The debtor's intent to surrender a property, as expressed on the Statement of Intention, therefore does not effect whether a payment is "scheduled as contractually due." Payments "scheduled as contractually due" are better defined as payments contractually due following the petition date on debts that are properly listed on the debtor's bankruptcy schedules.

9

Secured Debt from his current monthly income of $5,342.00 to reach a monthly disposable income of *negative* $539.25.  As the Debtor's sixty-month disposable income is less than $6,575.00, the presumption of abuse does not arise and the Debtor is entitled to summary judgment as a matter of law.

## CONCLUSION

This Court holds that a debtor may deduct all payments on secured debts pursuant to § 707(b)(2)(A)(iii)(I) regardless of whether the debtor exhibits an intent to surrender the property on the Statement of Intention.  Here, the Debtor properly deducted payments secured by a home that he intends to surrender.  The presumption of abuse under § 707(b)(2) therefore does not arise.  Accordingly, it is

**ORDERED**:

That the Debtors' Motion for Summary Judgment is hereby **GRANTED**.  It is

**FURTHER ORDERED:**

That the U.S. Trustee's motion to extend the bar date is hereby **GRANTED** and the U.S. Trustee shall have until August 14, 2009 to file either a complaint objecting to the Debtor's discharge under § 727 or a motion to dismiss under § 707(b)(3) .

Copies of this Order are directed to be sent to counsel for the Debtors, William J. Charboneau, Esq.; to Joseph A. Guzinski, Esq., Office of the U.S. Trustee; and to the Chapter 7 Trustee, Roy V. Creasy, Esq.

**Entered: July 20, 2009**

/s/ Ross W. Krumm
Ross W. Krumm
U.S. Bankruptcy Judge